UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JEREMY D. GIBSON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:14-cv-287-JMS-WGH |
| | ) |
| SASHI KUMARAN, | ) |
| | ) |
| Defendant. | ) |

**Entry Granting Defendant's Motion for Summary Judgment
and Directing Entry of Final Judgment**

## I.  Background

Plaintiff Jeremy D. Gibson ("Mr. Gibson") is a state prisoner confined at the Putnamville Correctional Facility ("Putnamville"). Mr. Gibson filed his Complaint on September 18, 2014. After the complaint was screened, the only claim that was allowed to proceed was Mr. Gibson's claim that casework manager Sashi Kumaran retaliated against him by refusing to allow him back into the PLUS Program after Mr. Gibson filed or attempted to file a grievance against Mr. Kumaran.

Defendant Kumaran filed a motion for summary judgment seeking resolution of the claim against him on the basis that Mr. Gibson failed to exhaust his available administrative remedies. Mr. Gibson opposed the motion for summary judgment and Mr. Kumaran replied.

For the reasons explained in this Entry, the defendant's motion for summary judgment [dkt. 23] must be **granted.**

**II. Discussion**

*A.     Legal Standards*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to the motion for summary judgment is the Prison Litigation Reform Act ("PLRA'"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the

time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

      B.     *Undisputed Facts*

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(c), the following facts, construed in the manner most favorable to Mr. Gibson as the non-movant, are undisputed for purposes of the motion for summary judgment:

Mr. Gibson has been incarcerated at Putnamville since April 11, 2013. A grievance program has been in place at Putnamville while Mr. Gibson has been incarcerated there. The purposes, rules, and procedures of this grievance program are set forth in the Offender Grievance Process, Policy, and Administrative Procedure 00-02-301 ("Offender Grievance Process"), which was in effect and readily available to offenders at all times relevant to this matter.

Offenders may grieve matters that involve actions of individual correction officers, and issues relating to the conditions of care or supervision. The grievance process at Putnamville first requires an attempt to resolve the complaint informally. If the offender's complaints or concerns are not resolved informally, he must file a Level I formal grievance with the Executive Assistant of the prison. The formal grievance is required to identify the issue that the offender is trying to resolve. If the offender does not receive either a receipt or a rejected form from the Executive Assistant within seven working days of submitting it, the offender shall immediately notify the Executive Assistant of that fact and the Executive Assistant shall investigate the matter. Dtk. 25-2., p. 17.

If the offender is not satisfied with the facility's decision on his formal grievance, he shall file a Level II Grievance Appeal with the Grievance Manager within ten working days from the return of his grievance. *Id.* at p. 24.

On December 31, 2013, Mr. Gibson was removed from the PLUS program and reclassified to idle. Mr. Gibson submitted an informal grievance on January 1, 2014, but did not receive any response, nor did he keep a copy. On January 13, 2014, he sent a second request to Mr. Mikles asking about getting into an educational program, and was told that regardless of whether he had quit or was removed from a "time cut program" he would have to wait six months per policy before he could get back into a program. Dkt. 34-1, p.1.

On January 24, 2014, Mr. Gibson sent a request for interview to Mr. Kumaran complaining about being removed from "the program," asking for forgiveness and to be returned to the program. Dkt. 34-1, p. 2. On January 28, 2014, Mr. Kumaran responded, "Sorry, u can re-apply after 7.1.14. U will have to re-start the program." *Id.* On January 31, 2014, Mr. Gibson sent another request for interview to Mr. Kumaran complaining that it was wrong for him to be removed from the program without being "wrote up." Dkt. 34-1, p. 3. Mr. Kumaran responded, "Like I have explained to you before, per policy, once u r put out of a time-cut program it will be 180 days before u can get into another time-cut and 90 days for a job." *Id.*

On February 3, 2014, Mr. Gibson submitted a "Classification Appeal" (State Form 9260) complaining about being reclassified out of the PLUS program without any disciplinary reports. Dkt. 34-2, p. 1. On February 11, 2014, the classification appeal was sent back to Mr. Gibson because "[t]his is an issue for the Unit team/Education/Grievance office. This was not a classification decision." Dkt. 34-3, p. 1.

On February 13, 2014, Mr. Gibson submitted an informal grievance complaining about being removed and reclassed from the PLUS Program and put on 6 months idle without being written up. Dkt. 34-4, p. 1. He stated, "I feel that I have been discriminated against because of Kumaran's own opinion of me. I did put in a grievance on 1-1-14 and never received anything back. Please help." *Id.* On February 19, 2014, a response was issued, stating, "Offender Gibson, Mr. Kumaran reports that you were removed from the PLUS program because you were placed under PREA ["Prison Rape Elimination Act"] investigation." *Id.*

On February 14, 2014, Mr. Gibson met with an Internal Affairs officer and was told that the PREA Investigation had found him not guilty, so he would be taken off idle status and should be placed back into the PLUS Program, but that decision would be up to Mr. Kumaran. Mr. Gibson's Affidavit, Dkt. 33, ¶ 11.

Mr. Gibson filed a formal grievance regarding the PLUS program. It was dated February 27, 2014, but it was received by the facility on April 21, 2014. Dkt. 34-6. It was assigned grievance number 82009. *Id.* In addition to his allegations, Mr. Gibson wrote, "This is now the 2nd time I have submitted this with no reply." *Id.* Mr. Gibson received a response to grievance 82009 on May 14, 2014, informing him that he was removed from the PLUS program because he was placed under PREA investigation. Dkt. 34-7.

Mr. Gibson signed the Offender Grievance Response Report on May 15, 2014, noting that he disagreed with the response. Dkt. 34-7. On May 16, 2014, Mr. Gibson mailed a Disciplinary Hearing Appeal (State Form 39587) to Central Office because he believed no other appeal forms were available. Dkt. 33, ¶ 14; Dkt. 34-8. His appeal stated the following:

> Grievance officer Chris Williams at the Indiana State Farm and casework manager Mr. Kumaran continue to deny me my reformative credit from the PLUS Program due to a false PREA Investigation. On 2/14/2014 Internal Affairs Captain D. Wire at the Indiana State Farm cleared me of any wrongdoing and got me placed to work

>  at the pallet shop. Since I've been cleared, I've tried to be reinstated to the PLUS Program and get my time out! PLUS Policy – attached to this appeal states; 'If the PLUS program participant is found not guilty, he shall be returned to PLUS…' For six months, I've been seeking justice! Internal Affairs found me not guilty – why won't Chris Williams & Mr. Kumaran?

Dkt. 34-8.

Mr. Gibson also filed a Notice of Tort Claim in Putnam Superior Court on July 7, 2014. Dkt. 34-10. The tort claim was dismissed on July 14, 2014. Dkt. 34-11.

If an offender wishes to obtain a grievance appeal form, the offender must submit a Request for Interview slip to the grievance office indicating that he wants a grievance appeal form and cite the case number assigned to the formal grievance, or the offender may simply return the formal grievance response page to the grievance office. A grievance appeal form will then be sent to the offender through the mail. Chris Williams Second Declaration, Dkt. 35-1, ¶ 5. After receiving a request for a grievance appeal form, the appeal form is usually delivered to the offender within one day. *Id.* at ¶ 6. When the grievance office receives a completed grievance appeal form from an offender, the offender is given a receipt. *Id.* at ¶ 7. The grievance appeal form must be returned to the facility grievance office and it will be scanned and processed through the offender grievance program. *Id.* at ¶ 8. It will then be electronically sent to the Central Office for the Indiana Department of Correction. *Id.* The scanning and processing of the grievance appeal form creates a record that a grievance appeal was filed. *Id.* Offenders are not to mail the appeal form to the central office. *Id.* at ¶ 9. Mr. Gibson did not file a Level II Grievance Appeal to the facility grievance office after receiving a response to grievance 82009.

   *C. Analysis*

Before the Court discusses Mr. Gibson's attempts to exhaust his administrative claims, it is important to emphasize what claim has survived screening in this case. In the Court's screening

Entry of November 20, 2014, the Court dismissed, among other claims, Mr. Gibson's due process claim relating to the denial of an educational program in prison. Dkt. 7. "To the extent Mr. Gibson challenges the process he was given or denied with respect to being removed from or denied readmission to the P.L.U.S. Program, such claims are **dismissed** for failure to state a claim upon which relief can be granted." *Id.* In response to that Entry, on December 23, 2014, Mr. Gibson attempted to reassert several of the claims that had been dismissed. Dkt. 8. In his December 23, 2014, filing, Mr. Gibson alleged that "the defendant undertook disciplinary action in retaliation for the plaintiff's exercise of his First Amendment rights to file a grievance." *Id.* In the Entry of December 30, 2014, the Court noted that Mr. Gibson had alleged that "defendant Sashi Kumaran retaliated against him by refusing to allow him back into the PLUS Program after the plaintiff filed or attempted to file a grievance against Mr. Kumaran." Dkt. 9. The only claim that was allowed to proceed was Mr. Gibson's claim of retaliation. All other claims, including the claim that Mr. Gibson was improperly denied readmission to the PLUS Program, were dismissed for failure to state a claim upon which relief can be granted. *Id.*

The parties disagree as to whether Mr. Gibson's failure to submit an appeal on the proper form and in the proper place renders his claim unexhausted, but the Court need not discuss that dispute. Rather, it is dispositive that Mr. Gibson did not raise the issue of retaliation at any level of his grievance submissions. Mr. Gibson's first request for interview complained about his being removed from the PLUS Program. Dkt. 34-1, p. 1. His second request for interview asked to be allowed back in the program. Dkt. 34-1, p. 2. His third request for interview told Mr. Kumaran that he did not deserve to be kicked out of the PLUS Program and placed on six months idle, and further stated "I feel like your [sic][ discriminating against me, you don't like me and are punishing me because of your own opinion of me." Dkt. 34-1, p. 3. The formal written grievance dated

February 13, 2014, again alleged that he felt that he had "been discriminated against because of Kumaran's own opinion of me." Dkt. 34-3. The written grievance dated February 27, 2014, alleges, in part, that he had "been discriminated against by Mr. Kumaran … he does not follow policy & rules…" Dkt. 34-6.

"The exhaustion requirement's primary purpose is to alert [ ] the state to the problem and invit[e] corrective action." *Turley v. Rednour,* 729 F.3d 645, 649 (7th Cir. 2013) (internal quotation omitted). None of Mr. Gibson's administrative filings allege that Mr. Kumaran was punishing him because of grievances that Mr. Gibson may have filed against Mr. Kumaran. Mr. Gibson did not put prison staff on notice of his retaliation claim.

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Because Mr. Gibson failed to complete the exhaustion process with respect to the retaliation claim asserted against Mr. Kumaran, in light of 42 U.S.C. § 1997e(a), this action should not have been brought and must now be dismissed without prejudice. *See Ford,* 362 F.3d at 401 ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice.").

### III. Conclusion

For the reasons explained above, the motion for summary judgment filed by defendant Mr. Kumaran [dkt. 23] is **granted.** Final judgment consistent with this Entry and with the Entry of November 20, 2014, shall now issue.

**IT IS SO ORDERED.**

Date: October 21, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Jeremy D. Gibson, DOC# 161129, Putnamville Correctional Facility, Inmate Mail/Parcels, 1946 West U.S. Hwy 40, Greencastle, IN 46135

Electronically registered counsel